IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| **State Automobile Mutual Insurance Company,** ) | |
| ) | |
| **Plaintiff** ) | |
| v. ) | **Docket No.:** |
| ) | **Judge** |
| **Fireman Fire Protection, Inc.,** ) | **Magistrate** |
| **James G. Stone III, Robin Aletras, and** ) | |
| **Auto-Owners (Mutual) Insurance Company,** ) | |
| ) | |
| **Defendants** ) | |

## COMPLAINT

Comes now State Automobile Mutual Insurance Company ("State Auto") and for its Complaint states as follows:

1. Plaintiff State Auto is a mutual insurance company organized under the laws of the State of Ohio, with its principal place of business in Columbus, Ohio. The Defendant Fireman Fire Protection, Inc. ("Fireman") is a Tennessee corporation with its principal place of business in Sevierville, Tennessee. The Defendant James G. Stone III ("Stone") is a resident of Sevierville, Tennessee. The Defendant Robin Aletras ("Aletras") is a resident of Pigeon Forge, Tennessee. The Defendant Auto-Owners Mutual Insurance Company ("Auto-Owners") is a corporation organized under the laws of the state of Michigan, with its principal place of business in Lansing, Michigan. There exists complete diversity of citizenship, pursuant to 28 U.S.C. Section 1332. The amount in controversy, without interest and costs, exceeds the sum or value specified by 28 U.S.C. Section 1332.

2. In addition to seeking a monetary award for damages, State Auto seeks a declaratory judgment of the rights and duties of the parties under the policies of insurance, pursuant to the Declaratory Judgment Act, 28 U.S.C. Section 2201.

1

3. On or about August 3, 2013, State Auto insured a house and buildings owned and occupied by Fireman and Stone located at 2912 Old Newport Highway, Sevierville, Tennessee 37876. A copy of this policy (Number CFP 2094868) with effective dates of 01/23/2013 to 01/23/2014 is attached as Exhibit A to this Complaint. On or about August 3, 2013, a fire occurred in the buildings located at 2912 Old Newport Highway, Sevierville, Tennessee 37876.

4. Fireman has made claims for coverage from State Auto for the damages which resulted from the fire on or about August 3, 2013.

5. Fireman operated a business at the location, which consisted of a school to teach students how to recharge fire extinguishers, sell pre-engineered fire suppression systems, and clean kitchen exhaust hoods. Stone also lived at this address. Stone is the President of Fireman.

6. Aletras lived at this address as well, having moved in two to three weeks prior to the fire. He was operating a woodworking business at the location, known as "Goodware," and was also maintaining Fireman's website needs in exchange for rent. Aletras secured an insurance policy from Auto-Owners to cover liability exposure and property located at the same address. Stone maintains that he and/or Fireman was or was to have been an additional insured under the Auto-Owners policy. Aletras did have liability coverage with Auto-Owners which would cover an accidental loss caused by Aletras, and on information and belief, the policy also covers some of the same property covered under the State Auto policy.

7. In the early morning hours of August 3, 2013, Aletras was working in the wood shop by himself. While emptying sawdust in a room in the insured structure, Aletras started a fire by dumping sawdust in and around an open flame, specifically the exposed pilot light of a gas water heater. Aletras maintains he tried to put out the fire, but was not successful. He also failed to call the fire department, 911, or the police department. He, in fact, claims to have run up and

down the road in front of the structure for what appears to have been 30 to 45 minutes while the fire grew larger, and eventually destroyed the structure. There were several houses and homes located next door or within easy walking distance of the structure where Aletras could have called 911 or sought help. Only after a passing motorist finally stopped and asked him if he had called 911, was a call to the fire department made. By that time, the flames had completely engulfed the structure and destroyed the building.

8. Fireman submitted a sworn statement in proof of loss dated October 23, 2013 in the amount of $1,030,031.00, a copy of which is attached as Exhibit B to this Complaint. This sworn statement in proof of loss also lists Auto-Owners as another company that insured the property.

9. Pursuant to the policy, State Auto is obligated to pay the mortgagee listed on the policy, JP Morgan Chase Bank ISAOA/ATIMA, for the damage to the dwelling or the amount owing under the policy to the mortgagee, as required by Tennessee law. In addition, State Auto advanced money to Fireman in good faith during the investigation in the total amount of $20,000.00.

## COUNT ONE

10. State Auto investigated the claims made by Fireman under the policy. This investigation yielded information that demonstrated a pattern of conduct by Stone, President of Fireman, wherein he, conducting the same business before incorporating Fireman, would buy property, insure the property or make sure liability coverage applied to a potential loss, and then, while he was out of town, cause and direct a loss to occur, which would result in substantial insurance benefits to him.

Specifically, on November 6, 2011, a building owned by Stone located at 1905 North Broadway, Knoxville, Tennessee, was knocked completely over by a rental truck operated by Robin Aletras while Stone was out of town in Las Vegas. Aletras had procured a substantial

3

Case 3:14-cv-00229-TAV-HBG   Document 1   Filed 05/29/14   Page 3 of 6   PageID #: 3

liability policy on the rental truck he was operating, and Stone received a hefty profit on his recent real estate investment. Stone attempted to conceal Aletras's involvement in the loss of this structure during the investigation of this fire loss.

In addition, on or about February 8, 2009, Stone purchased a building known as the Speedway Diner on the Asheville Highway in Sevierville, Tennessee. This building suffered a mysterious total fire loss for which Stone received $125,000.00 in insurance proceeds from National Grange Mutual, which was a substantial profit on his $50,000.00 to $60,000.00 investment in that building shortly before the fire. Again, Stone was out of town at the time of this fire.

11. Aletras intentionally set the fire at the direction and with the knowledge of Stone individually and as President of Fireman. Stone, as President of Fireman, committed fraud in materially misrepresenting the circumstances of the fire and his knowledge of it. Aletras committed material misrepresentations regarding his actions surrounding the fire and involvement in a conspiracy with Stone to burn down the building.

12. Fireman, through Stone, has materially breached the following provisions of the policy:

**COMMERCIAL PROPERTY CONDITIONS**

This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.

**A. CONCEALMENT, MISREPRESENTATION, OR FRAUD**
This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:
    1. This Coverage Part;
    2. The Covered Property;
    3. Your interest in the Covered Property; or
    4. A claim under this Coverage Part

CP 00 90 07 88 Page 1 of 1.

**CAUSES OF LOSS – SPECIAL FORM**

...

2. We will not pay for loss or damage caused by or resulting from any of the following:

    ...

    h. Dishonest or criminal act by you, any of your partners, members, officers, managers, employees (including leased employees), directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose:
        (1) Acting alone or in collusion with others; or
        (2) Whether or not occurring during the hours of employment.

    This exclusion does not apply to acts of destruction by your employees (including leased employees); but theft by employees (including leased employees) is not covered.

    ....

                                        CP 10 30 04 02 pp 2&3 of 8.

Based on the misrepresentation and intentional acts of the insured, State Auto denied the claim for insurance proceeds by letter dated May 29, 2014. This letter is attached as Exhibit C.

**COUNT TWO**

13. In the alternative, if indeed Stone and/or Aletras did not act intentionally to burn his structure, then Aletras's actions were negligent in starting the fire and in delaying a notification of the proper authorities such that the fire could be contained, and as such, Aletras is liable to State Auto for any amounts it is obligated to pay to Fireman under the policy.

14. As Auto-Owners is the liability carrier for Aletras, State Auto would be entitled to indemnification for any amount it would be obligated to pay Fireman under its policy from the liability coverage in Aletras's Auto-Owners policy.

**WHEREFORE**, State Auto prays this Court:

1. Declare the rights and duties of the parties under State Auto's policy, holding that State Auto owes no proceeds under the policy to Fireman due to the breach of the policy, intentional acts, and material misrepresentations and fraud;

5

Case 3:14-cv-00229-TAV-HBG   Document 1   Filed 05/29/14   Page 5 of 6   PageID #: 5

2. Declare the rights and duties of Auto-Owners under its policy, regarding its obligations to pay proceeds under its policy as a result of the fire loss on or about August 3, 2013;

3. Award a judgment against Fireman, Stone, and Aletras, jointly and separately, for the amount paid to the mortgagee under the policy, and for amounts advanced under the policy, plus interest and costs, and which is forfeited due to the breach of the terms and conditions of the policy and material misrepresentations and fraud of Stone as President of Fireman;

4. In the alternative, award a judgment against Aletras for the amount, if any, State Auto is obligated to pay its insured under the policy and order indemnification of State Auto by Auto-Owners under its liability policy with Aletras; and

5. For such other, further and general relief as this Court may find appropriate.

Respectfully submitted,

/s/ Michael P. Mills
MICHAEL P. MILLS, BPR #10551
MILLS & COOPER
5042 Thoroughbred Lane, Suite A
Brentwood, TN 37027
(615) 221-8218